UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TERESA MASLOWSKI, <br><br> Plaintiff, <br><br> v. <br><br> BROOKSIDE CONDOMINIUM ASSOCIATION II, INC., *et al.*, <br><br> Defendants. | Case No. 2:22-CV-6-GSL |

## **OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Complete Summary Judgment [DE 129] filed on February 20, 2025. For the reasons below, the Court GRANTS the motion.

## **PROCEDURAL BACKGROUND**

Plaintiff Teresa Maslowski initiated this cause of action by filing a complaint on January 10, 2022. The case relates to the purchase of a condominium unit she purchased without knowledge that condominium documents prohibited minors from living in the unit. With permission from the Court, Maslowski filed an amended complaint on December 15, 2022, in which she alleged violations of the Fair Housing Act ("FHA") and Indiana state tort law. Relevant to the motion at hand, Maslowski brings claims of familial status discrimination and unlawful coercion, both being violations of the FHA, against Defendants Brookside Condominium Association, Inc., Brookside Condominium Association II, Inc, Judy Pieszchala, and Anna Urosevich. Claims against five other defendants have been dismissed, and claims against two additional defendants are not at issue in the instant motion.

Defendants moved for summary judgment on February 20, 2025. Maslowski responded on April 21, 2025, and Defendants replied on May 16, 2025. The motion is now ripe for the Court's adjudication.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, a court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, a court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

## MATERIAL FACTS

Brookside Condominium Association, Inc. was incorporated with the Indiana Secretary of State on April 7, 1980, and administratively dissolved on October 30, 1989. Brookside Condominium Association II, Inc. was incorporated with the Indiana Secretary of State on March

1, 2012, and continues to this date. The Brookside Condominium Association II, Inc. Board includes Anna Urosevich as president, Kalyani Desai as vice president, and Judy Pieszchala as secretary and treasurer.

The Declarations of Condominium for Brookside Condominium Association, Inc., recorded in 1980, provide that the use and occupancy shall be limited to adult persons 17 years and older, and no apartment shall be sold or conveyed to a person having a minor child if the minor is to live in the apartment. The Declarations also provide that the association's board of directors has the right and duty to effect the condominium's purposes and that failure to enforce any right granted by condominium documents is not a waiver of the right to enforce that right in the future.

The Declarations also provide that if any element of the Condominium Documents is held to be invalid or unenforceable for any reason whatsoever, such holding shall not be deemed to effect, alter, modify or impair any other term, provision, covenant, or element of the Condominium Documents. Signatures have been obtained to amend the Declarations to remove the rule against minors.

The federal Fair Housing Act was amended in 1988, and became effective in 1989, to add a provision preventing discrimination based on familial status. Indiana adopted this prohibition against familial status discrimination in 1990, which became effective in 1991.

Prior to this lawsuit, no one told the condominium board that the restriction on children was illegal. Pieszchala had not heard of the Fair Housing Act until this lawsuit, though she now understands the Fair Housing Act forbids discrimination regarding family status. Desai understands that housing should be available for any color, race, religion, or children. No one before Maslowski suggested lifting the rule against children living in the building. The board of

the condominium association, whose members are the owners of the four units in the building, has never asked an owner or renter to leave because they had children.

Pieszchala and Urosevich co-own Unit 3 in Brookside, which Pieszchala's parents purchased in 1986. Pieszchala and Urosevich lease their unit to Patricia Casey and her daughter. Casey had a 13-year-old daughter living with her when she moved in, she lived there 12 or 13 years, and the association did not apply any restrictions to her. Desai has owned Unit 4 for 12 to 15 years with her husband. She purchased the unit from a friend who had two children living there. Desai has rented this condo to families with children in the past. There were people in other condos who had children living there before. Children have lived in the building since at least 1986, and it has never become an issue.

Brookside Condominium Association II, Inc., Brookside Condominium Association, Inc., and Pieszchala were not parties to the sale of the condominium unit to Maslowski. At the time Maslowski purchased her unit, a teenager lived in one unit, and two grade school aged children lived in another.

Maslowski voluntarily chose to close the real estate transaction on August 5, 2020, despite knowing that she had not received the homeowner association documents. Maslowski moved into the property on August 11, 2020, and learned of the restriction against minors on the same day from a woman living in the unit above Maslowski. After learning this information, Maslowski contacted her realtor, reached out to attorneys, and researched to educate herself. She also finished moving in and started looking for a new place shortly thereafter.

On August 11, 2020, Maslowski's realtor, Charissa Ellis, told her that the rule against minors was discrimination in violation of federal law and could not be enforced. Ellis again advised Maslowski on August 12, 2020, that the provision would not be allowed and that the

homeowner association would have to let her live there. Ellis told Maslowski that under federal law the condominium association could not be restricted to adults only unless it is deemed a 55 and older community. Ellis suggested that Maslowski contact an attorney.

After buying the condominium unit, Maslowski learned of laws against discrimination by doing research herself and found out the provision was illegal, discriminatory, improper, and wrong. Even after her research showed it was illegal and no one told her she had to leave, Maslowski proceeded to look for another place to live.

Maslowski was aware that a teenager lived in the unit owned by Pieszchala and Urosevich, that Desai had rented her unit to a family with kids, and that Rebecca in another unit did not know children were not allowed. No action was taken to cause Maslowski to move: Brookside never sent Maslowski any notice that she needed to move out, and no lawsuit or eviction proceeding was filed. No person ever told her to move: all four owners had no objection to her and the children staying. None of the owners told Maslowski they would ever enforce the provision. Maslowski voluntarily left.

Maslowski received the condominium association bylaws from Pieszchala after August 15, 2020. Maslowski sent a text to Pieszchala requesting that they have a meeting to change the bylaws, to which Pieszchala texted:

> I spoke to Kalyani [Desai] after the initial text since I felt I was completely blindsided by this "meeting." I will tell you what I told her. I will call my attorney on Monday to discuss this with him. This condo was left to me as an inheritance from my father and I have a very personal attachment to it. This condo is my current and future income from me and I don't take this lightly. Im truly upset about this whole ordeal.

Pl.'s Ex. at R. 578, ECF No. 140-15. Pieszchala sent another text the next day:

> Good morning ladies, just wanted to give you an update on what my plans are. I'm going to reach out to my attorney tomorrow to see what my options are. I'm pretty sure I will have him at our "meeting" to represent me. I ask that this meeting isn't scheduled until I speak with him and check his availability. Kalyani I know you

> mentioned you're going to put your condo on the mls this week. Please keep in mind the current bylaws state no minors defined by under 17. Also the president of the association is my mother and she needs to be present at this meeting more so than me. I will keep you posted after I speak with my attorney. Thank you.

*Id.* at R. 579. At her deposition, Pieszchala was asked whether she wanted Desai to tell people about the rule against minors because it was Pieszchala's intent to enforce the restriction. Pieszchala Dep. 57:19-21, ECF No. 140-6. Pieszchala answered, "I didn't want to go through this again with making a big deal out of nothing. So I did tell Mrs. Desai to include that in her listing, yes." *Id.* 57:22–24. Pieszchala admitted that she did not want the by-laws changed or minors to be allowed to live in the building. Pieszchala Req. Admis. 5, ECF No. 140-13. The meeting never occurred, as Maslowski purchased another residence and advised that she was moving.

Before these texts, Maslowski asked Desai and Rebecca if they minded if children lived in the condos, and neither one minded. Urosevich never told Plaintiff she had to move out. Pieszchala did not tell Maslowski she could not live in the unit with her children or that Maslowski had to move out. When Maslowski informed Pieszchala that she was moving, Pieszchala responded: "You dont have to move. I have no problem grandfathering you in what I dont want is the bylaw changed so anyone can buy or rent to people with children." Pl.'s Ex. at R. 580, ECF No. 140-15.

Ellis also testified at her deposition to a conversation she had with Pieszchala after the sale of the condominium unit closed, wherein Pieszchala "was adamant that the under 18 was in the bylaws and it was legal. And that my client would have to move out. She didn't understand

how it had gotten that far without us knowing there shouldn't be children there." [1] Ellis Dep. 62:5–9, ECF No. 140-5.

Maslowski felt uncomfortable and felt like the lady upstairs was watching her. Maslowski stated that when she first met the lady upstairs and was told no children were allowed to live there, it made her feel extremely uncomfortable. Maslowski also felt uncomfortable when Pieszchala texted that she did not want the bylaws changed to permit anyone to buy or rent to people with children. Maslowski testified that once Pieszchala stated she would grandfather her in, Maslowski did not want to try to work it out because she did not trust it as it was not legal.

Maslowski moved out of the property because she was scared of violating the rule against child residents and feared potential repercussions such as legal action. Maslowski did not feel welcome at the property. While Maslowski's departure was of her own accord, she did not want to leave the property.

## ANALYSIS

Plaintiff brings claims against Defendants Brookside Condominium Association and Brookside Condominium Association II (collectively, the "HOA") for familial status discrimination in violation of the FHA, *see* 42 U.S.C. § 3604(b), and against Defendants Pieszchala and Urosevich for unlawful coercion in violation of the FHA, *see* 42 U.S.C. § 3617.

### A.     Discrimination Under § 3604(b)

The Fair Housing Act, in 42 U.S.C. § 3604(b), forbids discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861 (7th Cir. 2018). To withstand

---

[1] Defendants object on hearsay grounds, but since this is a statement of an opposing party, it would be admissible at trial over this objection. *See* Fed. R. Evid. 801(d)(2).

summary judgment on this claim, Plaintiff must produce evidence that, considered as a whole, allows a reasonable jury to find that the HOA treated her differently because of her minor children in the household. *See Kormoczy v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Briggs*, 53 F.3d 821, 823–24 (7th Cir. 1995) (explaining that § 3604 claims "follow closely the elements of employment discrimination"); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (explaining legal standard for an employment discrimination case).

Though § 3604(b) "is not broad enough to provide a blanket 'privilege' to be free from all discrimination from any source," a condominium association's discrimination through the enforcement of its rules is actionable. *Bloch v. Frischholz*, 587 F.3d 771, 780 (7th Cir. 2009). Here, however, Plaintiff lacks evidence of the HOA's enforcement of the discriminatory rule against minors.

Plaintiff builds her case upon Pieszchala's communications. The strongest opposition Pieszchala presented to Plaintiff living in her unit with her minor children was in the conversation with Ellis, wherein Pieszchala affirmed that the rule against minors was in the condominium bylaws and that Plaintiff would have to move. There was no further attempt, by Pieszchala or the HOA, to actually enforce the rule against minors. On another occasion, Pieszchala told Plaintiff directly (through text message) that Plaintiff did not need to move out and could be "grandfathered" in. Pieszchala also texted that she wanted to discuss Plaintiff's suggested change to the bylaws with her attorney and asked another unit owner to "[p]lease keep in mind the current bylaws state no minors" when listing her unit. There is evidence that Pieszchala did not want minors to live in the building, but merely *wanting* a discriminatory practice is not an FHA violation. Also, Plaintiff's upstairs neighbor told her that she could not

8

live in her unit with her children, but this neighbor is not identified as a unit owner or someone able to act on behalf of the HOA.

Pieszchala offered to "grandfather" Plaintiff to allow her children to reside in the unit, specifically stating "[y]ou don't have to move." Pl.'s Ex. at R. 580, ECF No. 140-15. To be sure, Pieszchala also stated that she did not want "the bylaw changed so anyone can buy or rent to people with children," *id.*, but this evidence does not support Plaintiff's insistence that she was on the receiving end of familial status discrimination. Instead, it supports her exemption from it.[2]

Plaintiff admits that neither Pieszchala nor Urosevich told Plaintiff that she needed to move out. Plaintiff was told by the owners of the other two units that she could live in her unit with her children. The owners of the four units are the members of the HOA. There is no evidence to show that Pieszchala was speaking on behalf of the HOA when she spoke with Ellis. The HOA took no action to enforce the rule against minors against Plaintiff—or against anyone else, despite the long history of minors living in the building. This evidence, considered as a whole, is insufficient for a reasonable jury to find that the HOA discriminated against Plaintiff.

In the interest of thoroughness, a hostile housing environment claim can be brought under § 3604(b). The elements of such a claim are:

> (1) [the plaintiff] endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of her residency, or in the provision of services or facilities; and (3) that there is a basis for imputing liability to the defendant.

*Wetzel*, 901 F.3d at 861–62. "Harassment is severe or pervasive if it objectively interferes with the enjoyment of the premises or inhibits the privileges of rental," and this is determined by the

---

[2] Plaintiff has not argued that she was discriminated against during her sale of the property, for example by being prevented from selling to a buyer who intended to live with minors in the unit. *See Bloch*, 587 F.3d at 779 ("[T]he Blochs never made this argument to the district court, and moreover, offered no evidence that they intended to sell their units and that the Rule's enforcement stifled their efforts.")

9

totality of the circumstances. *Id.* at 862. The totality of the circumstances includes "the frequency of the discriminatory conduct, its severity, and whether it is physically threatening or humiliating rather than merely offensive." *Id.*

Here, any harassment that Plaintiff endured is neither severe nor pervasive. In addition to Pieszchala's communications mentioned above, Plaintiff's upstairs neighbor told Plaintiff that minor children could not live in her unit, and this neighbor made Plaintiff feel unwelcome and uncomfortable. Though Plaintiff felt humiliated and uncomfortable following these interactions, they were few in number, fairly mild, and not physically threatening. In combination, these interactions are not severe or pervasive harassment.

### B. Coercion Under § 3617

Plaintiff brings a claim for coercion under § 3617 against Defendants Pieszchala and Urosevich. To succeed on this claim, Plaintiff must prove the following elements:

> (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate.

*Bloch*, 587 F.3d at 783. Section 3617 applies to post-acquisition conduct, and not just the sale or initial rental of housing. *Watters v.* Homeowner*s' Ass'n. at Pres. at Bridgewater*, 48 F.4th 779, 785 (7th Cir. 2022). There is no real dispute that the first two elements are met. Instead, the parties disagree regarding whether Defendants' conduct meets the standard for the third element and whether Defendants had discriminatory intent.

Plaintiff has identified no interactions between herself and Urosevich. Accordingly, any liability by Urosevich must come through the agency relationship that Plaintiff argues exists between Urosevich and Pieszchala.

The Court has discussed Pieszchala's statements above. Those same statements are presented as evidence to support the § 3617 claim. And, as before, the statements are insufficient. The statements are not threats, nor can a reasonable jury interpret them as intimidation. Plaintiff specifically names coercion as the form of § 3617 violation that she suffered, but Pieszchala's statements did not force Plaintiff to undertake any particular action, much less force her to move out of the condominium.

The remaining path forward under the third element of a § 3617 claim is interference. "Interference is more than a quarrel among neighbors or an isolated act of discrimination, but rather is a pattern of harassment, invidiously motivated." *Bloch*, 587 F.3d at 783 (internal quotation marks omitted).

It is inaccurate to call Pieszchala's statements a "pattern" of conduct. Her report to Ellis that Plaintiff had to move was an isolated act. The offer to grandfather Plaintiff was not invidiously motivated. Pieszchala's desire to confer with an attorney regarding changes to the bylaws and her advice to a fellow unit owner that the bylaws still contained the rule against minors do not appear to be discriminatory against Plaintiff at all.

Plaintiff has not presented evidence from which a reasonable jury could decide that Pieszchala or Urosevich coerced, threatened, intimidated, or interfered with Plaintiff on account of her exercise of her fair housing rights. Summary judgment to Pieszchala and Urosevich must be granted.

## CONCLUSION

Based on the above, the Court hereby **GRANTS** Defendants' Motion for Complete Summary Judgment [DE 129] and grants summary judgment on Counts I and V of the Amended Complaint in favor of Defendants and against Plaintiff.

SO ORDERED.

ENTERED: August 20, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court